# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                  No. 10-cr-2316 WJ

JOSE CAIBA-ANTELE,

    Defendants.

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT

THIS MATTER comes before the Court on the Defendant's Objection to the Presentence Investigation Report (Doc. 42).[1] Defendant Jose Caiba-Antele objects to paragraph 26 of the Presentence Report ("PSR"),[2] which relays information concerning Defendant's arrest and charge for five counts of Criminal Sexual Penetration (Child Under 13) and one count of Criminal Sexual Penetration (Force/Coercion) in New Mexico state court in 2007 ("state court case"). Defendant does not object to the statements in the PSR concerning the procedural history of the state court case, but denies the underlying conduct. The United States filed a response brief arguing that the Court should take into account the factual recitation in paragraph 26 of the PSR when sentencing Defendant. The Court held an evidentiary hearing on the Objection on May 19, 2011 (Doc. 48). Being fully advised of the facts and the relevant law, the Court

---

[1] Defendant initially appeared for sentencing on March 23, 2011, at which time his counsel acknowledged that she had reviewed the PSR with Defendant in Spanish and there were no objections to the factual recitations in the PSR. Subsequently, and after the Court indicated that it was contemplating an upward variance based on the allegations in paragraph 26 of the PSR, Defendant requested leave to file objections to paragraph 26, which the Court granted.

[2] Hereafter, this refers to the re-disclosed Presentence Report dated February 8, 2011.

overrules Defendant's objection to the factual recitation contained in paragraph 26 of the PSR.

## BACKGROUND

At the May 19, 2011 hearing, the Court heard the sworn testimony of Detective Edgar Rosa, Detective Rene Molenda, and Assistant District Attorney ("ADA") Heather Chavez. Detectives Rosa and Molenda are detectives with the Las Cruces Police Department and worked with the victims from Defendant's state court case. Detective Rose has been a detective with the Las Cruces Police Department for seventeen years, and Detective Molinda has been a detective with the department for seven years. One of the areas Detective Molinda is responsible for investigating is crimes against children. ADA Chavez prosecuted Defendant's state court case. She has worked for the District Attorney for the Third Judicial District since 2002, and primarily prosecutes violent cases and child sexual abuse.

The factual allegations forming the basis of the state court case are as follows. In 2007, Defendant was living with his girlfriend Elizabeth, whom he had been dating for seven years. Elizabeth had two children: Sandra, then fourteen years old, and Israel, twelve. Elizabeth's sister and Defendant's stepbrother were married and lived nearby with their daughter, fifteen-year-old Gloria. On July 4, 2007, Gloria told her babysitter that Defendant had been raping her. The babysitter told Gloria's mother, Belinda, who informed her husband, who in turn confronted Defendant over the allegations. Defendant became upset at the allegations and went to Belinda's house. An altercation ensued, and the police were called.

Detective Rosa responded to the scene to investigate the child molestation accusations. He interviewed Defendant, Israel, Elizabeth, Belinda, her husband, and the babysitter. Detective Molenda interviewed Gloria. At the May 19, 2011 hearing in this case, the detectives testified that they learned from these interviews that Defendant had been molesting the three young

children – Israel, Gloria, and Sandra – for years. Defendant would invent excuses to send Elizabeth out of the house and then force Israel and Sandra to perform sexual acts with him. Defendant forced Israel to perform fellatio on him and submit to anal penetration on multiple occasions. This behavior started when the family lived in Phoenix, Arizona, and continued when they relocated to Las Cruces. In addition, Israel observed Defendant forcing Sandra to have sex with him, and on at least one occasion Defendant was engaging in sexual behavior with both Sandra and Gloria. Gloria often spent the night at her cousin's house and during those times, Defendant forced her to have vaginal sex with him once, and anal sex with him multiple times. Gloria was thirteen years old when the sexual abuse started. Gloria told the detective that she finally stopped going to her cousin's house in May of 2007 when Defendant told her he wanted her to have his baby, because Elizabeth couldn't have any more children.

Israel testified that he never told anyone about the abuse because he was scared of Defendant. Israel told the detective that Defendant hit Israel's mother. Israel also told the detective that he had a dream that, after telling the detectives about Defendant's behavior, he was taken away from his mother and his mother was crying. It turned out that Elizabeth in fact did not believe Israel's allegations, and she was non-cooperative throughout the whole state court case against Defendant.

Defendant was indicted in state court on August 2, 2007 on five counts of Criminal Sexual Penetration (Child Under 13) committed against Israel, and one count of Criminal Sexual Penetration (Force/Coercion) committed against Gloria.[3] He was arraigned and incarcerated on

---

[3] No charges against Defendant were filed on behalf of Sandra in the state court case. Detective Rosa indicated this was due to the fact that Sandra has a learning disability which put her mentally at a fourth-grade level at the age of fourteen.

August 2, 2007. The trial was continued for various reasons over the course of two years until August of 2009. At that point, Israel suffered an emotional breakdown rendering him unable to testify, and Gloria indicated that she was refusing to testify because she wished to get past what had happened to her and move on with her life. A nolle prosequi was entered and the case was dismissed on August 19, 2009. By that time, Defendant had spent two years in prison awaiting trial on these charges.

## LEGAL STANDARD

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.4.[4] "Elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt. Sentencing factors, on the other hand, can be proved to a judge at sentencing by a preponderance of the evidence." *United States v. O'Brien*, 130 S. Ct. 2169, 2174 (2010). The Federal Rules of Evidence do not apply in sentencing proceedings. F.R.E. 1101(d)(3).

## DISCUSSION

The Court finds that the United States has established by a preponderance of the evidence

---

[4] Subsequent to the United States Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005), the same legal rationale which allows the Court to consider any information to prove the history and characteristics of a defendant for departure purposes also applies for a variance under 18 U.S.C. § 3355(a)(1)-(7).

that Defendant committed the acts underlying his state court case as set forth in paragraph 26 of the PSR. At the May 19 hearing, the Court heard the testimony of two detectives with the Las Cruces Police Department who have considerable experience working with child victims of abuse and sexual molestation. Both detectives testified at length concerning what they had learned from the children. The detectives found the children's testimony to be credible because of the level of detail contained in the allegations – for example, details about the physical consequences of the type of sexual abuse alleged, details that children would be very unlikely to invent without having experienced such abuse.

     Detective Rosa testified that Israel found it difficult to speak during the interview, and that Israel was sad and tearful. He testified that, in his experience interviewing children who have suffered sexual trauma in the past, Israel's demeanor during the interview was consistent with someone who is telling the truth. He had no reason to believe Israel had a vendetta against Defendant, and testified that he found the details of his story to be very explicit for a twelve-year-old boy to be describing. Furthermore, Detective Rosa testified that Israel did not "recant" his story at any time, but that he was under pressure to change his story because his mother did not believe the allegations against Defendant. Similarly, Detective Molenda testified that Gloria's clear and concise statements against Defendant were credible and the detective had no reason to disbelieve Gloria's story. Detective Molenda found Gloria to be credible given the consistency of her statements, the details that she was able to provide, the demeanor in which she was able to deliver it, and the specifics she gave concerning the allegations.

     Defendant agrees that the correct standard is preponderance of the evidence, but argues that the detectives' testimony does not bear sufficient indicia of reliability and should not form the basis for an upward variance in the absence of direct testimony by the child victims.

However, hearsay testimony is admissible at a sentencing proceeding because the rules of evidence do not apply. The testimony of the police detectives at the hearing was credible, and the detectives in turn found the statements of the child victims to be credible. The detectives testified very thoroughly concerning the reasons based on which they concluded that the child victims were being truthful. Thus, despite the multiple levels of hearsay, the Court finds that it is more likely than not that the allegations of the child victims are true.

Defendant also argued at the hearing that the allegations should not be credited because both Israel and Gloria made allegations of abuse by people other than Defendant in the past. Israel told Detectives Rosa that he had been molested by Defendant's uncle, Chepe, while the family lived in Phoenix. Gloria told Detective Molenda that she had experienced sexual abuse when she was much younger, and that the perpetrator had been caught and was serving time. However, the Court declines to adopt the proposition that children who have been victims of past sexual abuse are no longer credible when they allege further sexual abuse by a different perpetrator. Furthermore, Israel's story of the abuse by Chepe is corroborated by his mother, who told Detective Rosa that she kicked Chepe out of the home when she found out what he was doing to her son, and by Defendant himself, who mentioned the incident in his interview with Detective Rosa. In other words, Israel's credibility is bolstered by this past allegation, rather than undermined.

Finally, Defendant argued at the hearing that it was unlikely that Israel was telling the truth given that his own mother did not believe the allegations. His mother indicated that Israel had been forced to take drug classes in school because he was caught sniffing glue, and that she thought Israel learned about these sexual acts from school or from watching too much television. Unfortunately, it is not uncommon for the mother of a child victim to side with her husband or

boyfriend rather than the child, for one reason or another. Certainly in this case, it does not seem likely that Israel invented these detailed allegations because he sniffed glue in school, nor does it seem likely that he learned about male-on-male sexual activities in school, or even on television programs. The more likely story is that Defendant actually molested and abused Israel in the ways that the child described to the detectives.

In conclusion, the Court finds by a preponderance of the evidence that Defendant committed the acts underlying the state court case charging criminal sexual penetration of a minor and criminal sexual penetration by force or coercion. The PSR currently calculates Defendant's offense level as 10, and his criminal history category as II, with 3 criminal history points. Hypothetically, supposing Defendant had been convicted of the charges in the state court case, his base offense level of 8 would have increased by 16 levels under U.S.S.G. § 2L1.2(b) due to a prior conviction of a crime of violence.[5] With a 3-level reduction for acceptance of responsibility, Defendant's hypothetical offense level would be adjusted to 21. Additionally, Defendant would have received an additional 3 criminal history points under U.S.S.G. § 4A1.1,[6] for a total of 6 criminal history points. This would have placed him in criminal history category III, and resulted in a guideline sentencing range of 46 to 57 months – a substantial increase over his current guideline range of 8 to 14 months.

---

[5] The definition of a "crime of violence" includes both "forcible sex offenses" and "sexual abuse of a minor." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[6] Although it is not certain what sentence Defendant would have received upon conviction in the state court case, Defendant had already served two years in prison by the time the nolle prosequi was entered and the case dismissed. Therefore, even if he were to have been sentenced to time served, he would still qualify for 3 criminal history points under § 4A1.1(a).

**THEREFORE, IT IS ORDERED** that Defendant's Objection to the Presentence Investigation Report (Doc. 42) is OVERRULED.

_____
UNITED STATES DISTRICT JUDGE